IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH BRAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1355-D |
| VS. | § | |
| | § | |
| GREEN TREE SERVICING, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Keith Bray ("Bray") seeking to recover from defendant Green Tree Servicing, LLC ("Green Tree")[1] for alleged violations of the Real Estate Settlement Procedures Act ("RESPA") and rules promulgated thereunder, and the Texas Debt Collection Act ("TDCA"), Green Tree moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Bray, who is now proceeding *pro se*,[2] sues Green Tree to recover under RESPA and the TDCA. In 2009 Bray executed a home equity note with Everhome Mortgage, secured

---

[1] After this lawsuit was filed, Green Tree changed its name to Ditech Financial LLC. The court will refer to the parties' names at the time the case was filed.

[2] Bray's counsel were permitted with withdraw after Bray filed his opposition response to Green Tree's summary judgment motion.

by a deed of trust.[3]  Everhome later transferred the loan to Green Tree.  The loan terms required that Bray obtain and maintain hazard insurance for the property and pay property taxes.  If Bray failed to insure his residence, Everhome, and later Green Tree, could obtain insurance and pay the taxes.  These payments would be funded by an escrow account established with additional monthly payments from Bray.

In 2013 Everhome notified Bray that it did not have records of insurance coverage for his residence.  Bray contends he disputed this assertion on at least three occasions in late 2013, sending Everhome copies of his hazard insurance.  Green Tree maintains that Everhome never received this proof of insurance.  Everhome thus secured insurance, created an escrow account, and charged Bray each month to fund the cost of the insurance.

After Everhome transferred the loan to Green Tree, Green Tree charged Bray $1,589.98 each month to maintain the escrow account.  Bray disputed the additional charges for the remainder of 2014.  On January 28, 2015 Bray sent Green Tree $8,812.95 in an attempt to satisfy outstanding principal and interest payments on the loan.  Bray included with his payment a request for disclosure and clarification regarding the escrow charges.

On February 3, 2015 Green Tree notified Bray that it had initiated the process of foreclosing on his residence.  Bray, in turn, submitted a request for a loan modification to

---

[3]In deciding Green Tree's summary judgment motion, the court views the evidence in the light most favorable to Bray as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

mitigate losses. The parties dispute whether the request, as submitted, constituted a complete request, and whether Green Tree received attachments to the request that Bray contends he sent. Green Tree notified Bray by letter that it considered the application incomplete, and that it required the following documentation: (1) a signed Uniform Borrower Assistance Form, (2) homeowners association documentation, (3) a list of expenses, and (4) a signed and dated quarterly or year-to-date profit-loss statement. Bray did not respond to the letter, and Green Tree denied his loan modification request.

Bray then filed this lawsuit against Green Tree in Texas state court, which Green Tree removed to this court based on federal question jurisdiction. Green Tree now moves for summary judgment. Bray opposes the motion.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment

is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Green Tree moves for summary judgment dismissing Bray's claim that Green Tree violated RESPA by failing to respond to a complete loss mitigation application, as required by 12 C.F.R. § 1024.41.

A

Under 12 C.F.R. § 1024.41—promulgated by the Consumer Financial Protection Bureau ("CFPB")—if any application for a loss mitigation option is submitted 45 days or more before a foreclosure sale, the servicer must:

> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section.

12 C.F.R. § 1024.41(b)(2)(i). Whether an application is complete as submitted determines a servicer's obligations under § 1024.41(c). Section 1024.41(b)(1) defines a complete application as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss

- 4 -

mitigation options available to the borrower." This definition does not specify who—as between the servicer and the borrower—determines what information a servicer requires.

When interpreting an ambiguous rule, the agency's interpretation of its own rule "control[s] unless (it is) plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citations omitted) (internal quotation marks omitted). The CFPB interpreted this Rule when it promulgated it. *See* 12 C.F.R. § 1024.41, Supp. I. According to the CFPB, "a servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options." 12 C.F.R. § 1024.41(b)(1), supp. I, cmt. 1. "A loss mitigation application is complete when a borrower provides all information required from the borrower notwithstanding that additional information may be required by a servicer that is not in the control of a borrower." 12 C.F.R. § 1024.41(b)(1), supp. I, cmt. 5. Based on the CFPB's interpretation of the Rule, the court holds that the servicer determines what information it requires from a borrower applying for loss mitigation options.

When a borrower submits a complete application, the servicer has the following duties under § 1024.41(c):

> (1) If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee

> of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1). If the servicer fails to perform these duties, the borrower can recover both actual and statutory damages. *See* 12 U.S.C. § 2605(f)(1).

To recover damages, Bray must present evidence that would enable a reasonable jury to find that he suffered "actual damages" as a result of Green Tree's RESPA violations. *See Obazee v. Bank of N.Y. Mellon*, 2015 WL 8479677, at *3 (N.D. Tex. Dec. 10, 2015) (Fitzwater, J.). The statute neither defines "actual damages" nor gives examples of what constitutes actual damages. Thus the court "look[s] to the plain meaning of the term." *Hernandez v. U.S. Bank*, N.A., 2013 WL 6840022, at *5 (N.D. Tex. Dec. 27, 2013) (O'Connor, J.) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "The term 'actual damages' is synonymous with 'compensatory damages,' which is defined as 'such [damages] as will compensate the injured party for the injury sustained, and nothing more[.]'" *Hernandez*, 2013 WL 6840022, at *5 (quoting *Black's Law Dictionary* 390 (6th ed. 1990)). RESPA also provides for the recovery of "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance . . . in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(B).

B

Green Tree maintains that it had no duty to timely respond to Bray's request for a loan modification in the absence of a complete application, and that Bray has offered no evidence that he submitted a complete application. Bray responds that he sent a complete application with the additional information that Green Tree needed. He maintains that there is a material fact issue concerning which version of his application Green Tree received. Because the court agrees that there is a genuine issue of material fact that precludes summary judgment,[4] it denies Green Tree's motion to the extent based on the premise that Bray failed to submit a complete application.

C

Green Tree also maintains that it is entitled to summary judgment on the ground that Bray has failed to produce evidence of damages.

1

Section 2605(f) imposes liability for "any actual damages to the borrower as a result of the [RESPA violation]." 12 U.S.C. § 2605(f)(1)(A). Thus Bray must present evidence that would enable a reasonable jury to find that he was damaged as a result of Green Tree's RESPA violations. *See Obazee v. Bank of N.Y. Mellon*, 2015 WL 4602971, at *4 (N.D. Tex.

---

[4]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

July 31, 2015) (Fitzwater, J.) (citing *Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 768 (N.D. Tex. 2012) (Ramirez J.), *rec. adopted*, 880 F.Supp.2d 747 (N.D. Tex. 2012) (Lynn, J.)).  As explained above, "actual damages" means compensatory damages.  Bray maintains that he incurred three categories of actual damages, and he also seeks statutory damages.

2

First, Bray contends that he lost 40 hours of time in connection to his loan modification application.  In an affidavit, he values this time as worth $7,800 based on his hourly rate at his company multiplied by 40 hours.  Bray cites three cases for the proposition that he can recover this lost time as actual damage under RESPA: *Johnstone v. Bank of America, N.A.*, 173 F.Supp. 2d 809 (N.D. Ill. 2001); *Guillermo v. Calliber Home Loans, Inc.*, 2015 WL 4572398 ( N.D. Cal. July 29, 2015); and *Cortez v. Keystone Bank, Inc.*, 2000 WL 536666 (E.D. Pa. May 2, 2000).  Bray's reliance on these cases is misplaced, however, because each one is factually distinguishable.

Each of these decisions relied on the fact that the plaintiff presented evidence of pecuniary damages, or adduced proof of time lost because it was spent away from the plaintiff's employment.  *See Johnstone*, 173 F.Supp.2d at 816 ("Johnstone has stated a claim to recover for time spent on this case and her inconvenience, insofar as she can establish actual pecuniary loss."); *Guillermo*, 2015 WL 4572398, at *5 ("The Court concludes that Plaintiffs have sufficiently *alleged* that the . . . lost wages they incurred were the result of the alleged RESPA violations." (emphasis in original)); *Cortez,* 2000 WL 536666, at *12

("Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer."). But Bray has neither alleged nor produced any evidence that the 40 hours he spent working on this matter took him away from his employment and caused him to incur a pecuniary loss. Without evidence of such a pecuniary loss, a reasonable jury could not find that Bray suffered actual damages in the form of lost time. Green Tree is therefore entitled to summary judgment dismissing this basis for Bray's damages claim under RESPA.

3

Second, Bray contends that he incurred $20 in damages spent preparing his application for loss mitigation. Bray has cited evidence in opposition to Green Tree's motion that is sufficient to raise a genuine issue of material fact.[5] Accordingly, the court denies Green Tree's motion in this respect.

4

Third, Bray contends that his credit score suffered as a result of Green Tree's failure to act, resulting in an inability to secure more favorable interest rates for financing. In his affidavit, Bray avers that the high interest rate he received "was due to my poor credit caused by [Green Tree's] derogatory credit reporting in connection to my mortgage loan which could have been brought current by the modification." P. App. 9. In support, he relies on the following evidence: excerpts of two credit reports, with a focus on the Green Tree entry, and

---

[5]*See supra* note 4.

evidence of a high interest rate (8.99%) that he received on an automobile loan. Bray contends that a comparison with the national average of 2.99%, and a letter from the financing company citing his poor credit history, establish his damages resulting from Green Tree's actions.

The court concludes that a reasonable jury could not find from this evidence that a Green Tree violation of RESPA caused Bray to suffer the damages he claims. Bray must introduce evidence that would enable a reasonable jury to find that his lower credit score was the result of Green Tree's failure to respond to his loan modification. The excerpts from the credit reports would not enable a reasonable jury to find that Green Tree's conduct was a cause of his low score. He submits no evidence that his credit score was higher before Green Tree reported his history. Nor does he produce any evidence that negative reports from other financial institutions did not cause him to receive a lower score. A reasonable jury could not find from this evidence that Bray's low score was a "result of" any violation of RESPA, as 12 U.S.C. § 2605(f) requires.

5

Bray also alleges statutory damages under § 2605(f)(1)(B). Statutory damages of up to $2,000 are recoverable if a defendant has engaged in "a pattern or practice of noncompliance" with RESPA. *See* 12 U.S.C. § 2605(f)(1)(B). Bray alleges that Green Tree has engaged in a pattern of noncompliance with RESPA, as demonstrated by a voluminous collection of complaints filed against Green Tree alleging similar practices, and a consent decree between the Green Tree and the Federal Trade Commission ("FTC") regarding alleged

consumer protection violations.

Because § 2605(f)(1)(B) does not specify what constitutes a "pattern or practice of noncompliance" with RESPA, courts have interpreted the phrase in accordance with the usual meaning of the words to mean "a standard or routine way of operating." *See McLean v. GMAC Mortg. Co.*, 595 F.Supp.2d 1360, 1365-66 (S.D. Fla. 2009) (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)). Courts have also required that plaintiffs seeking statutory damages present evidence of a "standard or institutionalized practice of noncompliance" by the defendant. *Id.* at 1365 (citation omitted).

Bray first relies on "1,952 complaints regarding [Green Tree] in connection with modification, collection, or foreclosure, and 2,691 complaints regarding [Green Tree] in connection with servicing, payments, and escrow." P. Br. 12. The law is relatively undeveloped as to whether a critical mass of consumer complaints can ever be indicative of a pattern of noncompliance, and, if so, how many complaints are sufficient. *See Obazee*, 2015 WL 4602971, at *4. But the court need not resolve this question to decide Green Tree's motion. This is so because Bray has failed to present sufficient evidence for a reasonable jury to find in his favor. Merely offering evidence of a certain number of complaints, without placing that number in context, cannot prove a pattern or practice of noncompliance. At an irreducible minimum, the jury would need to know the percentage of total loans serviced that these complaints represent, and the percentage of complaints that are ultimately proved meritorious. Other considerations may also bear on whether the number of complaints alone establishes a standard or institutionalized practice of noncompliance. Bray's evidence is

- 11 -

insufficient to enable a reasonable jury to find in his favor.

Bray also submits a settlement agreement between the FTC and Green Tree. *See FTC v. Green Tree Servicing LLC*, No. 15-CV-02064 (D. Minn. Apr. 23, 2015) (Stipulated Order for Permanent Injunction and Monetary Judgment). This agreement would not of itself, or in combination with Bray's other evidence, enable a reasonable jury to find that Green Tree had engaged in a standard or institutionalized practice of noncompliance. Green Tree denies any wrongdoing. *Id.* at 2. And the decree itself does not establish any operative fact that would lend credence to Bray's theory of a pattern or practice.

IV

Green Tree moves for summary judgment dismissing Bray's second RESPA-based claim: that Green Tree failed to respond to a properly-filed Qualified Written Request ("QWR").

A

12 U.S.C. § 2605(e)(1)(B) defines a QWR as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Upon receipt of a QWR, a servicer must act within 30 days to provide the name and telephone number of a representative able to assist the borrower. *Id.* A servicer must also choose one of the following responses: make appropriate corrections based on the borrower's concerns;

conduct an investigation and provide the borrower with a written explanation or clarification as to why the servicer believes the account is correct; or conduct an investigation and provide a written explanation of why the information requested is unavailable or cannot be obtained. *Id.* at § 2605(e)(2)(A)-(C). Liability for damages can be imposed when a servicer fails to respond as required. *See* 12 U.S.C. § 2605(f). If a servicer responds but fails to sufficiently address the borrower's concerns, a court can impose liability under § 2605(f). *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712,723-26 (S.D. Ohio 2014).

B

It is undisputed that Bray's letter qualifies as a QWR. Green Tree opted under 12 U.S.C. § 2605(e)(2)(B) to investigate and explain why the account was correct. It is also undisputed that Bray received Green Tree's response within the mandated 30 business days. And the parties agree as to the content of the response. They only dispute whether Green Tree's response satisfies the requirements of 12 U.S.C. § 2605(e)(2)(B). Because the content of the response is uncontested, the question whether it is sufficient to satisfy statutory minimum requirements is a question of law for the court. *See, e.g., Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 236 (5th Cir. 2012).

Bray's QWR stated:

> I am disputing the "Esc Disb-Hazard/Fire" charge of $1,652 listed on the 12/26/2014 Transaction Activity and Monthly Escrow charge of $1,589.98 which is outrageous as it is twice the amount of the monthly princip[al] and balance. This is [a] new monthly charge that has mysteriously appeared since Green Tree Mortgage assumed the mortgage from Everhome Mortgage in 2014. I am requesting full disclosure and clarity for both of these

>   items.

P. App. 29.

>   Green Tree responded:
>
> > Records indicate your account was originally escrowed for hazard insurance. Everbank force placed escrow for taxes, as information was received that your 2013 tax payment was delinquent. We have enclosed a copy of the letter sent to you from Everbank dated April 22, 2014, advising you of the forced place escrow for taxes.
> >
> > Your account was transferred to Green Tree on May 01, 2014 with a negative escrow balance of -$7,367.90. Since the time of the service transfer, Green Tree has paid the taxes due for 2014 in the amount of $6,455.59. Your current escrow balance is -$15,255.03.

D. App. 24.

Section 2605(e)(2)(B) imposes on a servicer a duty to investigate, and a duty to provide a "statement of the reasons for which the servicer believes the account" is correct. Green Tree fulfilled both obligations. According to Green Tree's response, it reviewed Bray's records to ascertain the reasons the escrow account existed. And Green Tree explained the reasons for assessing the $1,652.00 charge reflected on the 12/26/2014 transaction activity and the monthly escrow charge of $1,589.98.

Bray contends that this response was inadequate because it only explained "why the escrow account exists at all, but otherwise did not substantively address [Bray's] inquiries[.]" P. Br. 12. The court disagrees. Bray's QWR made a request for "full disclosure." P. App. 29. In response, Green Tree provided Bray the information that he specifically requested.

- 14 -

Bray cites *Marais*, 24 F.Supp.3d 712, as support for his argument. *Marais*, like this case, considered the sufficiency of a QWR response. But in *Marais* "the undisputed testimony from Chase' duly selected deponent, [was] that Chase investigated nothing. Rather, when Marais' QWR arrived, Chase stamped it received." *Id.* at 723. Chase then responded with a form letter and forwarded relevant documents. The court held that this was insufficient, noting that an "investigation" requires at least some measure of search, inquiry, or examination. *Id.* at 723. The *Marais* court also concluded that an "explanation" requires more than a standard form letter, and that the response must be particularized in some way. *Id.* Unlike the defendant in *Marais*, Green Tree's QWR response shows that it did investigate. It reviewed its records to determine the grounds for assessing the charges. Green Tree then sent a personalized response to Bray detailing its findings. The court therefore holds as a matter of law that Green Tree fully complied with its statutory duties and is entitled to summary judgment dismissing the second ground of Bray's RESPA claim.

V

Finally, Green Tree moves for summary judgment as to Bray's remaining claims under two provisions of the TDCA: Tex. Fin. Code Ann. §§ 392.303(a)(2) and 392.304(a)(8). Green Tree maintains that Bray "cannot produce competent summary judgment evidence that Defendant violated the Texas Debt Collection Act by imposing an escrow account based on Plaintiff's failure to comply with his contractual obligations." D. Br. 10.

A

Section 392.303(a)(2) provides that "a debt collector may not use unfair or

unconscionable means," including "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]"

In his response, Bray submits evidence sufficient to show a triable issue of fact. Summary judgment on this claim is therefore denied.[6]

### B

A debt collector is also forbidden from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code Ann. § 392.304(a)(8). To establish a claim for a violation of § 392.304(a)(8), a plaintiff must prove that the debt collector "made a misrepresentation that led her to be unaware (1) that she had a mortgage debt, (2) of the specific amount she owed, or (3) that she had defaulted." *Rucker v. Bank of Am, N.A.*, 806 F.3d 828, 832 (5th Cir. 2015) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir.2013)).

Bray has not pointed to any evidence that is sufficient to satisfy at least one element of this section. In fact, neither party addresses the elements in the briefing. In neither his complaint nor in the summary judgment record does Bray allege or maintain that he was unaware of the debt that Green Tree and Everhome asserted. Instead, Bray disputes the

---

[6]*See supra* note 4.

escrow charges. But whether the charges were justified is a question to be answered under § 392.303(a)(2), not § 392.304(a)(8).

Because Bray has not presented any evidence to support his claim under § 392.304(a)(8), the court grants summary judgment dismissing the claim.

\* \* \*

For the foregoing reasons, Green Tree's motion for summary judgment is granted in part and denied in part.

**SO ORDERED**.

September 26, 2016.

                                      SIDNEY A. FITZWATER
                                      UNITED STATES DISTRICT JUDGE